UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| R. KYLE DAVIS, § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | | CIVIL ACTION H-13-623 |
| § | | |
| COUNTRYWIDE HOME LOANS, INC., *et al.,* § | | |
| *Defendants*. § | | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is a motion for summary judgment filed by Countrywide Home Loans, Inc. ("Countrywide"); The Bank of New York, as Trustee for the Alternative Loan Trust 2006-18CB ("BNY"); Countrywide Home Loans Servicing, LP; CWALT, Inc.; ReconTrust Company, N.A.; and Mortgage Electronic Registration System ("MERS") (collectively, the "defendants"). Dkt. 21. After considering the briefing, evidence of record, and applicable law, the defendants' motion for summary judgment (Dkt. 21) is **GRANTED**. The claims of plaintiff R. Kyle Davis as Trustee for the Cape Lookout Way Trust ("plaintiff") are **DISMISSED WITH PREJUDICE**.

**I. BACKGROUND**

On April 18, 2006, Tracy James ("James") took out a home loan in the amount of $242,400.00 in favor of America's Wholesale Lender ("America's Wholesale"), the "Lender," for the purchase of a home in Humble, Texas. Dkt. 21, Ex. A (the promissory note). James (together with Gary McBride) contemporaneously executed a deed of trust (the "deed") to secure payment of the note.[1] Dkt. 21, Ex. B (the deed). The deed named MERS as the nominee for America's Wholesale and its successors and

---

[1] Courts interchangeably use the terms "deed of trust" and "mortgage" throughout the relevant case law. *See Starcrest Trust v. Berry*, 926 S.W.2d 343, 351 (Tex. App.—Austin 1996, no writ) (defining a "deed of trust" as a mortgage with power to sell on default). This court will generally refer to the "deed of trust" in this case as simply the "deed."

assigns.[2] *Id.* at 2. The deed also specified that MERS had "the right to foreclose and sell the [home]; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." *Id.* at 3. On June 15, 2011, MERS executed an assignment of the note and deed in which MERS purported to assign the note and deed to BNY. Dkt. 21, Ex. C (assignment). The assignment was recorded in the deed records of Harris County on July 5, 2011. *Id.* at 1. The original mortgagor, James, is a former owner of the home, and after a series of transfers via quitclaim deed in 2012, the plaintiff is current owner and mortgagor of the property. *See* Dkt. 22, Exs. M–O.

The note required the mortgagor to remit monthly payments to the Lender on the first day of each month beginning on June 1, 2006. Dkt. 21, Ex. A at 1 ¶ 3(A). The mortgagor fell behind on the payments, and a trustee's sale for foreclosure was scheduled for March 5, 2013. Dkt. 1 (notice of removal), Ex. B-1 (TRO application) at 1. On February 27, 2013, plaintiff filed this lawsuit in the 61st Judicial District Court of Harris County, Texas. Dkt. 1 (notice of removal) at 2 ¶ 1. Defendants timely removed the case to this court on March 7, 2013. *Id.* at 1. Plaintiff asserts the following claims in his live pleading: wrongful foreclosure; fraud in the inducement; slander of title; a suit to quiet title; and a claim for other declaratory/injunctive relief. Dkt. 1, Ex. B-2 (original petition) at 15–25.

## II. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The movant bears the initial burden of informing the court of evidence, if any,

---

[2] The MERS system is an "electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans." *In re Mortg. Elec. Registration Sys. (MERS) Litig.*, 659 F. Supp. 2d 1368, 1370 (J.P.M.L. 2009).

that demonstrates the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the movant has discharged its initial burden does the burden shift to the nonmovant to demonstrate that there is a genuine dispute of material fact. *Id.* at 322. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). A dispute is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248.

Rule 56 requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine dispute for trial. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). Instead, the nonmovant must identify specific evidence in the record and articulate precisely how that evidence supports his or her claims. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998). When the nonmovant fails to set forth specific facts, by affidavits or otherwise, to show that there is a genuine dispute for trial, summary judgment is appropriate. *Topalian v. Ehrman*, 954 F.2d 1125, 1132 (5th Cir.1992). Factual controversies are to be resolved in nonmovant's favor, "'but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" *Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075). The court will not, "in the absence of any proof, assume that the [nonmovant] could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine dispute for trial. *Anderson*, 477 U.S. at 249–51.

### III. ANALYSIS

#### A.   *Lack of Standing/Wrongful Foreclosure*

In his first claim, plaintiff seeks a declaration from this court that any foreclosure of the home would be wrongful because no defendant has standing to foreclose due to defects in the assignment and securitization process.[3] Specifically, his wrongful foreclosure allegations can be grouped into three categories: (1) BNY is not a proper party to foreclose because it is not the Lender and there are insufficient indorsements of the note and deed; (2) an unauthorized agent for MERS improperly assigned the power of sale under the deed to BNY, thus invalidating the assignment; and (3) defendants did not comply with the securitization requirements of the applicable Pooling and Servicing Agreement ("PSA").[4] Under recent Fifth Circuit case law, however, each ground fails and plaintiff's wrongful foreclosure claim must be dismissed.

#### 1.   Chain of Title and Assigned Rights

First, plaintiff contends that MERS's assignment of the note and deed to BNY was invalid because the note lacks any indorsements. Dkt. 22 at 11. But plaintiff fails to realize that while a chain of indorsements is sufficient to establish a right to foreclose, it is not necessary. *Miller v. Homecomings*

---

[3] Plaintiff's claim must be one for declaratory relief because an attempted wrongful foreclosure claim is not recognized under Texas law and a traditional wrongful foreclosure claim would not be ripe when plaintiff retains possession of the home. *See Port City State Bank v. Leyco Constr. Co.*, 561 S.W.2d 546, 547 (Tex. Civ. App.—Beaumont 1977, no writ) (finding no supporting authority for an attempted wrongful foreclosure claim under Texas law); *Ayers v. Aurora Loan Servs.*, 787 F. Supp. 2d 451, 454 (E.D. Tex. 2011) ("Plaintiff has not alleged an actual violation of the Texas Property Code because no foreclosure sale has occurred.").

[4] "Securitization" refers to the "process of pooling loans and selling them to investors on the open market." *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1197 n.2 (10th Cir. 2011). A PSA is one of many "complex, interrelated contracts" typically executed when a mortgage securitization trust is formed. *Chase Manhattan Mortg. Corp. v. Advanta Corp.*, No. Civ. A. 01-507 KAJ, 2005 WL 2234608, at *1 (D. Del. Sept. 8, 2005). In a mortgage securitization, the securitizing party acquires mortgage notes, pools them together, and then sells them into a trust. *Id.* Interests in the trust are sold to investors, and the money raised is used for new mortgages. *BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assurance Corp.*, 673 F.3d 169, 173 (2d Cir. 2012). In this case, BNY acted as the trustee for the Alternative Loan Trust 2006-18CB (the "trust"), which was the assignee of James's promissory note and security instrument. *See* Dkt. 21, Ex. C at 1.

*Fin., LLC*, 881 F. Supp. 2d 825, 830 (S.D. Tex. 2012) ("[H]olding the original note is one way to establish the right to foreclose, but not the only way."). Instead, defendants have pointed to an unbroken chain of assignments for standing to foreclose, even without the original note. *Martins v. BAC Home Loan Servicing, L.P.*, 722 F.3d 249, 255 (5th Cir. 2013).

Plaintiff also argues that MERS did not assign the right to foreclose properly because it did not assign in its capacity as nominee and only assigned its beneficial interest.[5] Dkt. 22 at 11. To determine if MERS transferred the power of sale requires the court to determine whether MERS received such power under the security instrument. According to the assignment, MERS assigned "all beneficial interest" to BNY. The deed in turn states that "MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property . . . ." Dkt. 21, Ex. B at 3. The plain language of this provision makes clear that one of MERS's "interests" in the home explicitly includes a power of sale. *Athey v. MERS*, 314 S.W.3d 161, 166 (Tex. App.—Eastland 2010, pet. denied). Plaintiff nonetheless cites the quoted language above and says that MERS does not have the power of sale to transfer because that interest is not "necessary to comply with law or custom." Dkt. 21, Ex. B at 3. This argument misses the mark because that clause is irrelevant to the court's analysis. The clause specifies conditions for the *exercise* of certain rights, including "the right to foreclose," not whether

---

[5] Plaintiff makes a brief statement in his response that MERS could not act as a nominee for America's Wholesale, the Lender, because it was defunct on the date of the assignment. Dkt. 22 at 18 ¶ 41. Plaintiff offers no evidence, however, to substantiate this assertion, and the court will not consider a naked claim that is insufficient to create a genuine dispute of material fact. *Little*, 37 F.3d at 1075 (holding that plaintiff's summary judgment burden is not satisfied by unsubstantiated assertions and can only be met with actual evidence of contradictory facts).

MERS holds those rights in the first place. MERS was granted a beneficial interest in the power of sale under the deed and had the capacity to transfer that right to BNY.

### 2. The Authority of MERS's Purported Agents

Next, assuming MERS had a right to foreclose that it could convey to BNY, plaintiff argues that the MERS assignment was signed by an unauthorized agent and is void. Dkt. 22 at 21 ¶ 48. Plaintiff alleges that Tanyia Hill, a purported MERS Assistant Secretary, improperly assigned the note and deed to BNY on the same day that she executed a document as an Assistant Vice President of BAC Home Loans Servicing, LP. *Id.* at 17 ¶ 40. Therefore, the plaintiff's argument goes, Ms. Hill was an unauthorized agent and the assignment is void as a forgery. *Id.*

While mortgagors argued the forgery point for years in the district courts, the Fifth Circuit recently issued a published opinion addressing this precise contention. *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220 (5th Cir. 2013). In *Reinagel*, the mortgagors defaulted on their note and sought to enjoin the foreclosure, contending that the assignments by which the bank obtained the note and deed were invalid. *Id.* at 223–24. The Fifth Circuit held that the mortgagors could argue that the transfers were void, because while "an obligor cannot defend against an assignee's efforts to enforce the obligation on a ground that *merely renders the assignment voidable* at the election of the assignor, Texas courts follow the majority rule that the obligor *may* defend 'on any ground which renders the assignment void.'" *See id.* at 225 (first emphasis added) (quoting *Tri-Cities Constr., Inc. v. Am. Nat'l Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ)); *Ortiz v. CitiMortgage, Inc.*, 954 F. Supp. 2d 581, 586–87 (S.D. Tex. 2013) (holding that plaintiffs could challenge an assignment on grounds that it did not occur because such an allegation goes to the issue of validity *ab initio*). And as relevant to the instant case, a contract executed by a person fraudulently purporting to be a corporate officer is voidable

at the defrauded principal's election; it is not void as a matter of law. *Reinagel*, 735 F.3d at 226 (citing *Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976)).

Thus, under *Reinagel*, plaintiff's validity and forgery contentions cannot be heard. Assuming Ms. Hill is an unauthorized agent—and there is little evidence to do so—the plaintiff has no standing as an obligor to challenge her authority.[6] *Nobles*, 533 S.W.2d at 926–27 ("It is settled that . . . a deed [executed by a person fraudulently misrepresenting her agency] is valid and represents prima facie evidence of title until there has been a successful suit to set it aside . . . [which] can only be maintained by the defrauded [principal]."). Further, there is no evidence that Ms. Hill's signature was "forged" in the correct sense of the term. Under Texas law "one who signs his true name, purporting to act as the agent of another, has not committed a forgery." *Nobles*, 533 S.W.2d at 926. Here, plaintiff merely alleges that Ms. Hill was not authorized to sign on MERS's behalf. That is not a forgery. Plaintiff lacks standing to challenge MERS's assignment on grounds of unauthorized agency.

3.  **The Allegedly Improper Transfer Under the PSA**

Plaintiff further argues that MERS's assignment of the note and deed to Deutsche Bank is procedurally and substantively irregular under the PSA and New York trust law. Regarding PSA defects, plaintiff has no standing to make these arguments against any mortgagee.[7] *Reinagel*, 735 F.3d at 228.

---

[6] But even if it could be heard, plaintiff's challenge to Ms. Hill's authority would likely fail on the current record. Plaintiff's basic argument is that on June 15, 2011, Ms. Hill acted in separate transactions as an Assistant Secretary for MERS and as an Assistant Vice President of BAC Home Loans Servicing, LP. This allegation, however, serves little purpose other than to highlight that Ms. Hill acted in separate capacities, which is not uncommon in our society. After all, the Vice President of the United States also serves as the Senate's President, with the power to cast the tie-breaking vote when that body is equally divided. U.S. CONST. art. I, § 3, cl. 4. It would hardly be unlawful for the Vice President to attend a state funeral and break a Senate tie on the same day. Similarly, in the case of MERS, the organization generally relies on its members to have their employees act as MERS officers with authority to sign on MERS's behalf. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1040 (9th Cir. 2011); *Howard v. JPMorgan Chase N.A.*, No. SA-12-CV-00440-DAE, 2013 WL 1694659, at *8 (W.D. Tex. Apr. 18, 2013). "As a result, most of the actions taken in MERS's own name are carried out by staff at the companies that sell and buy the beneficial interest in the loans." *Cervantes*, 656 F.3d at 1040.

[7] The alleged defects in the securitization process include a purported violation of the MERS Rules of Membership and a mortgage assignment after the closing date of the trust. Dkt. 22 at 18–19 ¶¶ 41–43.

Plaintiff further claims that the trustee's acts void the assignment under New York trust law, which provides that "every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and any other provision of law, is void." N.Y. EST. POWERS & TRUSTS LAW § 7-2.4. Although the statute uses the term "void," courts applying the law have treated improper transfers as subject to ratification and therefore voidable, not void. *Mooney v. Madden*, 193 A.D. 2d 933, 933–34, 597 N.Y.S.2d 775 (N.Y. App. Div. 1993) ("A trustee may bind the trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when the beneficiary or beneficiaries consent or ratify the trustee's ultra vires act or agreement."); *cf. Peniche v. Aeromexico*, 580 S.W.2d 152, 157 (Tex. Civ. App.—Houston [1st Dist.] 1979, no pet.) ("It is well settled that an illegal contract cannot be ratified or saved by estoppel."); *Bank of Am. Nat'l Ass'n v. Bassman FBT, LLC*, 981 N.E.2d 1, 8–10 (Ill. App. Ct. 2012) (concluding under New York law that a trustee's unauthorized or *ultra vires* decisions are voidable, not void).[8] Thus, plaintiff's allegations regarding New York trust law and PSA violations address voidable acts that plaintiff has no standing to contest. *Reinagel*, 735 F.3d at 228.

### 4. Conclusion

In sum, plaintiff's challenges to MERS's assignment of the power of sale to BNY may not proceed in this wrongful foreclosure action. Because plaintiff has failed to raise a genuine dispute of

---

[8] Plaintiff cites a recent New York decision to support his argument that improper trust transfers are void. *Wells Fargo Bank, N.A. v. Erobobo*, No. 31648/2009, 2013 WL 1831799, at *8 (N.Y. Sup. Ct. Apr. 29, 2013) (holding that "the acceptance of the note and mortgage by the trustee after the date the trust closed [is] void"). *Erobobo*'s reasoning, however, has been generally criticized by courts around the country, including this district. *See, e.g.*, *Felder v. Countrywide Home Loans*, No. H-13-0282, 2013 WL 6805843, at *19 & n.170 (S.D. Tex. Dec. 20, 2013) (Lake, J.); *Halacy v. Wells Fargo Bank, N.A.*, No. 12-11447-TSH, 2013 WL 6152351, at *3 (D. Mass. Nov. 21, 2013); *Sigaran v. U.S. Bank Nat'l Ass'n*, No. H-12-3588, 2013 WL 2368336, at *3 (S.D. Tex. May 29, 2013) (Rosenthal, J.) ("Despite New York law's use of the term 'void,' courts applying New York law have treated *ultra vires* actions by trustees as voidable and capable of ratification."). This court agrees with Judges Lake and Rosenthal and finds that *Erobobo*'s holding, from a New York trial court, does not accurately reflect New York trust law as would be interpreted by the state's court of last resort, the Court of Appeals of New York. *Travelers Cas. & Sur. Co. of Am. v. Ernst & Young LLP*, 542 F.3d 475, 482–83 (5th Cir. 2008) (explaining that a federal court sitting in diversity must make an educated *Erie* guess as to what state law is when the court of last resort has not addressed a particular issue). The court holds that a trustee's acts that are inconsistent with its obligations under the trust are voidable under the New York Estates, Powers and Trusts Law.

material fact as to the validity of MERS's assignment of the note and deed to BNY, summary judgment is granted on plaintiff's wrongful foreclosure claim.

### B. *Fraudulent Inducement*

Plaintiff next contends that the defendants defrauded him by affirmatively misrepresenting that they were entitled to exercise the deed's power of sale provision and that they were legal holders or beneficiaries of the note and deed. Dkt. 1, Ex. B-2 at 20–21 ¶¶ 79–85. Plaintiff claims that defendants made these material misrepresentations "in order to induce the Plaintiff to rely on the misrepresentations and [foreclose] on the Property." *Id.* at 21 ¶ 82.

To prove fraudulent inducement, the plaintiff must first establish the five basic elements of fraud under Texas law: "(1) a [material] misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010). Fraudulent inducement also requires proof of an underlying contract that was induced by the fraudulent statement. *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001).

Here, defendants are entitled to summary judgment on the fraud claim because plaintiff has not shown any contract that was purportedly induced by defendants' statements of authority to foreclose under the note and deed. Further, as discussed above, plaintiff has not raised a genuine dispute of material fact relating to BNY's authority to exercise the power of sale, and thus plaintiff has not met his summary judgment burden to present evidence of a material misrepresentation. For both of these reasons, plaintiff's fraud in the inducement claim is dismissed.

C.  *Slander of Title*

Plaintiff further alleges that the defendants' notice of default and trustee's sale slandered his valid title. Dkt. 1, Ex. B-2 at 21–23 ¶¶ 86–93. Defendants move for summary judgment on grounds that plaintiff has no evidence that defendants acted falsely or maliciously or that he lost a specific sale as a result of defendants' conduct. Dkt. 21 at 15–16. The court agrees with the defendants.

Under Texas law, "'[s]lander of title' is defined as a false and malicious statement made in disparagement of a person's title to property which causes special damages." *Elijah Ragira/VIP Lodging Grp., Inc. v. VIP Lodging Grp., Inc.*, 301 S.W.3d 747, 758 (Tex. App.—El Paso 2009, no pet.). The necessary elements are "the uttering and publishing of disparaging words that were false and malicious, that special damages were sustained, and that the injured party possessed an interest in the property disparaged. . . . Further, the complaining party must demonstrate the loss of a specific sale." *Id.* at 759.

Here, plaintiff's proof fails to demonstrate a genuine dispute of material fact on his slander of title claim. Plaintiff has not presented sufficient evidence that any defendant made a false or malicious statement regarding the authority to foreclose. *See Storm Assocs., Inc. v. Texaco, Inc.*, 645 S.W.2d 579, 588 (Tex. App.—San Antonio 1982) ("A claim of title does not constitute malice where the claim is made under color of title or upon reasonable belief that parties have title to the property acquired."), *aff'd sub nom. Friedman v. Texaco, Inc.*, 691 S.W.2d 586 (Tex. 1985). Plaintiff has also not alleged that he

lost a specific sale of his home to support a slander of title claim.[9] *Elijah Ragira*, 301 S.W.3d at 759. For these reasons, summary judgment is granted on plaintiff's cause of action for slander of title.

### D. Suit to Quiet Title

In his last substantive claim, plaintiff alleges that no defendant holds a perfected claim to his home, and thus the court should quiet title in his name and enjoin defendants from asserting any adverse property interest. Dkt. 1, Ex. B-2 at 23–24. Defendants seek dismissal of this claim on grounds that plaintiff cannot show a superior interest in the real property. Again, the court agrees with defendants.

A suit to quiet title "'enable[s] the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'" *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (quoting *Thomson v. Locke*, 1 S.W. 112, 115 (Tex. 1886)). "[T]he plaintiff has the burden of supplying the proof necessary to establish his *superior equity and right to relief*." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (emphasis added). The effect, therefore, of a suit to quiet title is to establish that the defendant's claim to title is "invalid or ineffective." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

---

[9] Plaintiff argues that "failure of a specific sale is not mandatory" to sustain a slander of title claim, and that the plaintiff may recover upon a showing of impaired market value attributable to the cloud on the title. Dkt. 22 at 29–30 ¶ 70. This argument is quite curious, given that the Texas Supreme Court has specifically rejected it. In *A.H. Belo Corp. v. Sanders*, 632 S.W.2d 145 (Tex. 1982), the jury found that the plaintiff had not lost a specific sale as a result of the defendant's statement, and the trial court issued a take-nothing judgment. *Id.* at 145. The court of appeals reversed, holding that the plaintiff could recover upon a showing that "the vendability of the lots had been impaired." *Id.* The Supreme Court disagreed with the court of appeals, reinstated the district court's judgment, and reaffirmed the "general rule long-standing in Texas" that the plaintiff "was required to prove the loss of a specific sale or sales in order to recover on his slander of title action." *Id.* at 145–46; *see also Jeanes v. Henderson*, 703 F.2d 855, 860 (5th Cir. 1983) (applying *Sanders* and dismissing a slander of title claim for failure to adduce evidence of a lost sale). This court is bound by *Sanders* and *Henderson* and will not depart from clear Texas law on the elements of slander of title.

Plaintiff has not created a fact question as to his superior right to relief, for he has presented no competent evidence challenging BNY's claimed authority to foreclose. Plaintiff's quiet title claim is dismissed with prejudice.

### E. *Other Declaratory and Injunctive Relief*

Lastly, Plaintiff seeks declarations from the court regarding the validity of the documents needed to exercise the power of sale and the rights of the parties generally. Dkt. 1, Ex. B-2 at 24–25 ¶¶ 102–13. This claim is intertwined and dependent with plaintiff's wrongful foreclosure claim, which has already been dismissed, and it will therefore be dismissed as well. *Val-Com Acquisitions Trust v. CitiMortgage, Inc.*, 421 F. App'x 398, 400–01 (5th Cir. 2011) (per curiam) (explaining that "[o]nce the district court had dismissed the underlying [substantive] claims, there were no claims for which [it] could grant declaratory relief").

## IV. CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (Dkt. 21) is **GRANTED**, and plaintiff's claims are **DISMISSED WITH PREJUDICE**. The court will enter a separate final judgment consistent with this order.

It is so **ORDERED**.

Signed at Houston, Texas on March 3, 2014.

_____
Gray H. Miller
United States District Judge